## In re REPLOGLE.

Patent Appeal No. 3033.

Court of Customs and Patent Appeals.

Dec. 27, 1932.

Ralph E. Baker, of Detroit, Mich. (Warren H. F. Schmieding, of Cleveland, Ohio, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant has made application to the United States Patent Office for a patent on improvements in control of automatic refrigeration apparatus. Several claims were rejected by both tribunals in the Patent Office. On appeal to this court, appellant has dismissed his appeal as to all of said claims except claims 9 and 16, which are as follows:

"9. In an artificial refrigerating system for maintaining different maximum temperatures within a plurality of chambers, having a single compressor-condenser unit and power appliance, a plurality of evaporators associated with said chambers and adapted to contain liquid refrigerant, and common refrigerant feed and return conduits for connecting said evaporators with the compressor-condenser unit, the combination therewith of means affected by the pressure within the return conduit to control the operation of the power appliance, and means affected by the pressure in one of the evaporators to positively prevent a premature discharge of refrigerant from said evaporator into the return conduit until a predetermined temperature is reached in the chamber associated with said evaporator."

"16. In an artificial refrigerating system for maintaining definite maximum temperatures within a plurality of chambers, having a single compressor-condenser unit and power appliance, a plurality of evaporators associated with said chambers and adapted to contain liquid refrigerant, a common refrigerant feed and return conduit for connecting said evaporators with the compressor-condenser unit, a combination therewith of means affected by the pressure within the return conduit to control the operation of the power appliance, a valve for regulating the flow of the refrigerant from one of the evaporators into the return conduit, means responsive to the pressure internally of said evaporator for actuating said valve and including a snap action valve control for maintaining said valve in either its closed or open position until a predetermined maximum or minimum pressure is reached in the evaporator."

Appellant's disclosure is of a mechanical refrigerating apparatus with three refrigerating chambers, in each of which a different predetermined range of temperatures may be maintained, by maintaining different pres-

sures of the evaporant in evaporators in each of said chambers. A condenser unit supplies the refrigerant to each evaporator; the three evaporators having a common inlet pipe. Branch outlet pipes from these evaporators discharge into a common conduit. The first evaporant is in open communication with the common outlet; the second and third have interposed in their branch outlets two-temperature, snap-acting valves, which may be adjusted to varying pressures, and which control the pressure of the refrigerant in said evaporators.

The tribunals of the Patent Office have rejected appellant's claims on a single reference, Eddy, No. 1,185,597, of May 30, 1916. This reference shows three refrigerating chambers, capable of being maintained at different temperatures by evaporators. The refrigerant is admitted to coils in the chambers through balanced valves; such valves being operated jointly by the pressure of the refrigerant upon a diaphragm and supplementary pressure due to the expansion of a liquid in a thermic receptacle.

The essential difference between the Eddy device and that of appellant lies in the character of the valves used in the outlet pipes from the different evaporators. Appellant, as has been said, uses a snap valve. Eddy's valves are, as described by the Board of Appeals:

"The valves used in the Eddy construction in the same position are of the usual spring pressure type in which the tension of the spring is adjusted to hold the refrigerating fluid in the coil up to a point where it receives an amount of heat, and then the increased pressure of the fluid is sufficient to overcome spring pressure, open the valve and discharge the heated fluid into the return pipe. These valves are proportioned to prevent back pressure at high pressure into a coil intended for a lower pressure."

The appellant argues that he has devised a new type of refrigerating apparatus; that his application of snap, positive acting, valves, in these conduits, has produced a new and highly useful improvement in the art; that the snap-acting valves which he employs will open, positively and completely, when a certain predetermined high pressure has been attained, and will likewise close, completely and positively, when a predetermined low pressure has been reached. As to the operation of Eddy's valves, appellant argues:

" * * * It will be noted that the underside of the diaphragm 66 is subjected directly to the pressure prevailing in the passage 67 of the valve and consequently subjected directly to the pressure within the evaporator. An increase of pressure within the evaporator causes an increase of pressure on the underside of the diaphragm 66. Thus, it will be seen that the higher the pressure within the evaporator the more the valve 64 will be open and, vice versa, as the pressure in the evaporator decreases the throttling action of the valve 64 increases. It is apparent, therefore, that the valve 64 increases its throttling action to decrease the flow of gaseous refrigerant from the evaporator as the pressure within the evaporator decreases."

It is contended by appellant that this construction of Eddy's valves will create a constant fluttering and a partial opening of the same at frequent intervals as the pressure rises and falls in the evaporators, all of which is obviated by the type of valves appellant uses. He contends that by this means he has made a highly desirable improvement in the art. This improved result is conceded by the Solicitor for the Patent Office.

As to this point, the Board of Appeals says:

"Appellant contends that such valves being opened at a predetermined pressure will also close at substantially the same pressure producing a fluttering of the valves. We do not see that the system will so operate, especially in view of the use of the balanced valves at 44 which control the fluid in the coil in turn acting upon valve 63 to open it. If the valves do not flutter, then the constant and unnecessary starting and stopping of the condensing unit is avoided and the other difficulties referred to in appellant's brief would not occur. But even if fluttering did occur, the correction of the difficulty is obvious, and we can see no invention in changing the valve in the reference to provide one which requires a greater range of pressure to open and close the valves."

We are unable to discern wherein the inlet valve, thus mentioned by the Board, will materially affect the action of the outlet valve, when the pressure in the evaporator is high. Then the operation of the outlet valves may be expected to be as stated by appellant. It is only when the pressure in the evaporator is materially reduced that such pressure may be said to be in any degree controlled by the inlet valves.

It is admitted that the various elements used in appellant's device are old. It would seem, however, that the combination of these

elements has produced a new and useful result. We are not prepared to hold that such adaption of known devices as appellant has used, to as old an art as automatic mechanical refrigeration, is obvious.

█ What is, or is not, obvious, depends much upon circumstances. The ordinary rule is that, if the suggested change would, on inspection of a device without experimentation, occur to one skilled in the particular art, then such change may be said to be obvious. However, in this case those skilled in this art and employed in perfecting refrigerating devices seem to have had no mental conception of the application of these well-known snap valves to control the refrigerant circulating therein. That there were defects in the operation of the well-known spring pressure valves is apparent. Whether those skilled in the art had no exact understanding of the defects to be remedied, or whether the idea was not conceived by them that such defects might be remedied as appellant has remedied them, we cannot say. One thing only is certain, that the changes were not suggested until appellant filed his application herein.

█ this view of the matter, we are unable to come to the conclusion that the improvements which appellant has made were obvious. We have arrived at much the same state of mind expressed by us in Re Wessblad, 58 F.(2d) 418, 419, 19 C. C. P. A. 1175, where we said:

"* * * Nevertheless, considering the references in connection with appellant's combination, its admitted novelty, usefulness, and the distinct advancement it made in the absorption refrigerating art, we are out of accord with the conclusion reached by the Patent Office tribunals. We think the claims are patentable."

Again we said in Re Fawick, 56 F.(2d) 873, 875, 19 C. C. P. A. 1124:

"* * * It would seem, therefore, that if appellant's combination was obvious to those of ordinary mechanical skill, it would have occurred to someone at an earlier date."

Other cases in point are In re Angert, 34 F.(2d) 1014, 17 C. C. P. A. 575; In re Baker et al., 36 F.(2d) 138, 17 C. C. P. A. 681; In re Symonds, 47 F.(2d) 972, 18 C. C. P. A. 1128; In re Howard, 53 F.(2d) 523, 19 C. C. P. A. 768; In re Jones, 58 F.(2d) 461, 19 C. C. P. A. 1173.

The decision of the Board of Appeals is reversed as to said claims 9 and 16, and is in other respects affirmed.